The United States Court of Appeals for the Fifth Circuit is now open according to law. Good morning. Be seated, please. I want to start out by thanking both counsel for agreeing to appear at this hearing in person. It seems a little strange that we should all consider ourselves courageous to be doing this in light of the configuration of the courtroom and the stringent precautions that we are taking, but that's the way the world works at the moment. The court will appreciate you. Please take off your mask while you're speaking because nobody can understand what you say otherwise. And we'll, for the sake of appearances and protection, we will keep ours on except when we're asking questions. You are familiar with our road signs, I'm sure. I've almost forgotten them. It's been 10 months since I sat on a bench in these surroundings. But we have a traffic light system, and if our ladies can manage it, these are our courageous judicial assistants sitting in in lieu of the people from the clerk's office in New Orleans. There will be a two-minute light come on, which will tell you to start winding up your argument. And when the red light comes on, we ask you to conclude unless the court is asking you a question. We are familiar with the briefs and record excerpts. We may not have read the entire record, although this case doesn't really turn on the record. So with that, and I've already made a mistake because I don't have my appearance sheet here, but we will first recognize counsel for the appellant, Ms. Bunn. And I see you're court-appointed, lest I forget in the past, and I particularly appreciate your showing up today. Thank you, ma'am. I appreciate you all letting us come out here to do this. So may it please the court, my name is Cheryl M. Bunn, counsel for the appellant. Mr. Klein was convicted of two counts for violations of interstate protective orders, orders that did not qualify as protective orders, and for a situation that was not intended to be covered under 18 U.S.C. 2262 and the Violence Against Women's Act. If, however, the judge did not err in those rulings, then Mr. Klein was sentenced for violations even though he evinced a singular intent against one alleged victim in violation of Colorado's singular intent. And he was sentenced improperly for both offenses. First, I will cover the first issue. The district court erred in denying the pre-trial motion to dismiss the indictment. The Colorado mandatory protection orders do not meet the definitions set forth in 18 U.S.C. 2266, and are therefore not enforceable. In relevant part, the definition of the protective order is covered in 18 U.S.C. 2266, subparagraphs 5A. One that is issued by a criminal court so long as the order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection. Neither of the orders that were issued in the state of Colorado are protection orders because they were mandatorily issued. They were not issued in response to a filed complaint, petition, or motion, and they were not requested or on behalf of the alleged victim. The government, in its brief, wants this court to look at the inclusiveness that the statute seems to infer. Counsel, can you address the argument that the district attorney or the court must make a motion prior to the order being entered? Yes, ma'am. In this particular case, when we look at the statute, the words, so long as, seem to modify what follows on behind that. So in this particular case, there was no motion. There was no complaint or petition. And it would seem that if the intent was to make this just any protective order, if it's called a protective order, those words, so long as, would not be incorporated into the statute. And because of that, it is evident that the intent behind this was to enforce protective orders that Congress thought were desired by an alleged victim, or possibly an alleged victim just couldn't file them on their own, but they were filed in response to a motion or a petition on their behalf. Well, does it not convince the intent in order to contact the police or accept police aid? I would say no, ma'am. And the reason that I would say no in that particular case is because not everybody that calls the police necessarily wants protection. I think that that could be possibly one inference. But I think that it is more of a logical leap to just say that everybody that contacts the police in a circumstance like this wants a protection order. Can you address the multiple, whether it's an initial violation and whether the intent should be measured only once, you know, the issue that multiple, multiple counts. How do you deal with the fact that if the protective order is issued within the state, how could interstate travel ever qualify as a subsequent? If you get someone in the car, then it's already violated. Then every single time you're going to not have the interstate travel. Yes, ma'am. Yes, ma'am. I will address that. And I think that what is relevant in that particular question is the fact that the intent behind the Violence Against Women's Act was to modify or secure that there were no legal loopholes so that somebody who was out of the state could not necessarily either encourage somebody to cross state lines or them themselves cross state lines in order to complete a violation of the interstate protective order. In this particular case, Mr. Klein and the alleged victim, they lived basically in the same city. So he had already violated the protective order. When you look at the statute, the intent of Congress was not to enforce every court order. It was an intent to enforce a state's intent to protect that particular individual. So multiple violations of orders within the same state should really not be the focus of the court. What this court should focus on is that here the state of Colorado wanted to prevent contact between Mr. Klein and the alleged victim. That was done so into protective orders. But it is a singular intent of the state of Colorado. And so because he had already violated it in Colorado, that order was enforceable in Colorado. It didn't need a legal loophole to be closed. And that's where in this particular case the district court got it wrong. Well, excuse me, ma'am, but I think the fact that you're saying that because he had one romantic relationship where he continually abused the female doesn't amount to multiple assaults and harassment and so on is a little surprising to me. The first order was issued after he was charged with assault by strangulation, false imprisonment for more than 12 hours, harassment by striking, kicking, or shoving, knowing or reckless assault of a pregnant victim, and use of a weapon in a violent crime. Then he was charged with violating, a month later, he violated that earlier protective order. So I'm assuming that he was charged with violating because the order prohibited him from harassing, contacting, or communicating directly or indirectly. I suspect he wasn't charged the second time without having also perpetrated something against the young woman. Ma'am, based on what the record is, it appears I would disagree based on the second part of that. And the real issue is that she simply called the cops. That's the bottom line. She called the cops because the situation that she was in, and I recognize this court may deem that she was in a domestic violence relationship. However, I would urge the court to look at the victim's sworn testimony, as well as the sentencing statement that Mr. Klein made. In this particular case, I don't think it was of the nature of domestic violence. And I think that that's where the mandatory— Well, then you're proving that it's two separate orders. Because the second order, when she called the cops, if nothing happened to her, she called the cops because he was violating the order of no contact. So the first one is for the violence. The second one is for violating the no contact order. No, ma'am. I don't think she called the cops because he violated the protective order. I think she called the cops because she was not being allowed to consume alcohol when she was pregnant, and she was upset with that.  How did that have to do—wait a minute. Is that in the record? I believe that it is referenced in the record in the sentencing portion of my client's statement to the court. So that's when they decided that he was violating the protective order. They decided he was violating the protective order when he did not show and he traveled subsequently through New Mexico. No, I'm not talking about the federal violation. I'm talking about the second Colorado violation. I think there has not been a determination that he violated the first protective order because it was not adjudicated, ma'am. It was just simply a—there was a call, and because whatever they were addressing met the definition of what was supposed to occur for a mandatory protection order, they issued the protective order, mandatorily, without any adjudication of the facts, whether they be true or not. Well, that's fine. Well, a bruised eye and crying and claims that— so you're not suggesting, are you, that these activities that I referenced are false, are you? Ma'am, I don't know whether they're false or not, and if you look at the election— But they're two separate activities. One of them is a charge, a mandatory protection order based on physical attacks, and the second one is an order based on violation of the no contact order, correct? Yes, ma'am. Okay. Am I correct that there's no direct case law on this point about whether it was a continuous act or two separate acts? Sir, I attempted to find something that was relevant and on point, and I could not find something that was relevant on point to continuous acts for protective orders. That's correct. And our review on this would be de novo, would it not? That is correct, sir. Counsel? Yes, ma'am. Your client does say that he didn't do these batteries and things, and that's been his position throughout. Yes, ma'am. However, the district court did not accept that. Yes, ma'am. And the district court also didn't accept the victim's statements that she's, you know, willingly going and doing all of this that could be read. So aren't we stuck with what the district court believed in the given, if there could be multiple interpretations, even assuming arguendo that you can collaterally attack these orders? And that's an issue, too. Can you collaterally attack them? But even assuming you could, the district court made some determinations, and aren't we stuck with those if there's anything in the record to support them? Ma'am, if that's this court's interpretation, that those are sufficient evidence and that's the resulting decision of the court, then I guess then you would be. However, I would submit that there's no evidence in the record of that. I mean, the alleged victim herself testified that that was not what occurred, and then my client gave a statement during sentencing and explained all of that. So there's simply no evidence in the record. The court just said, I'm just going to disagree with it, without pointing to any evidence for which he was disagreeing on that point. How did that work with these orders going on? When did these orders expire? The first order had, I believe it was a year that it was in effect, and I think that the second order was sometime around the same year expiration time frame. So they would have been in effect at the time that the decision to leave the state occurred. We're not here to say that they weren't in effect during that time. But they're not in effect now. No, ma'am. I know there's a prison situation, but there's also perhaps a child and all of that. I don't know what the circumstances of that are. I don't know that it matters for the court, but the child has been turned over to Child Protective Services and is not in the care of the mother for many of the reasons set forth in this case. So I'd like to save the remainder of my time for rebuttal, if that's acceptable to the court. Okay. Would you please, to what issue has the balance of your argument so far been directed? To the motion to dismiss? It has been directed to— Sorry. Yes, ma'am. I apologize. To the motion to dismiss, as well as I think some of the questions related to somewhat of the—a little bit of the multiplicious nature. Okay. All right. Then you've reserved time. Thank you. Thank you, ma'am. Okay. Mr. Rodriguez? Sorry. Oh, well. Good morning, Your Honors, and may it please the court. My name is Anthony Rodriguez, and I represent the United States. The Violence Against Women Act was designed for cases just like this, to protect individuals like the victim in this case, who at the time of the first altercation was pregnant with the defendant's child, strangled, falsely imprisoned for 12 hours, and had a wrench thrown at her. That's the exact kind of person who is looking for protection, contrary to my friend's assertions. And with that in mind, the United States respectfully requests this court affirm the district court for at least the following two reasons. First, the district court did not err in denying the motion to dismiss the indictment because the orders at issue in this case are indeed protection orders, as made clear by the plain text of the Violence Against Women Act. And second, that there was no—that the district court also did not err in denying the motion to elect the count of conviction because the two counts were not multiplicitous. I'd like to turn briefly to a question presented to my friend by Judge Jones regarding the second Colorado conviction. And, Your Honor, starting on the record at Record Site 69 and the pages that immediately precede that, you will see the evidence of the order itself, followed by the preliminary hearing that was held in the Douglas County Court, where it is clear in the record that the arrest was due to violation of the first protection order. The facts that underlie that was the two were visiting a national park. They got into an altercation that was, I believe, as my friend indicated, regarding—actually, as I was, it was involving the loss of narcotics that was overheard by a ranger who intervened. And during the discussion, the victim indicated on her own accord that she was the victim and subject of the first protection order. And so, to turn to my first point, the plain text of 2266, paragraph 5, makes clear that these orders are, in fact, protection orders. And you can look at the statute, really, in the guise of it's—there are two components to it. There's the initial component that begins by stating that a protection order includes, which as this court made clear in Direct TV against Budden is the term of enlargement and not limitation, and states, as I quote, that protection order includes any injunction, restraining order, or any other order issued by a civil or criminal court for the purpose of preventing violence or threatening acts or harassment against sexual violence or contact or communication or physical proximity to another person. There might as well be a period on that, Your Honors, because that captures on the front end, with what is, in essence, almost a catch-all provision, stating any order issued by a civil or criminal court. And as you'll note on page 56 of the record and 69, those are your two protection orders, that bear criminal cause numbers in the upper right corner. So is it your position, the United States' position, that even if a state enters one of these orders, when the person actually doesn't want the order, that that would still be on behalf of the person? You know, if they're actually showing up and saying, no, don't do this, this is—you know, I really want to have contact, and they didn't really hurt me, you know. Are you—would they still be acting on behalf? I believe so. I believe that Colorado's statute, specifically 18.1-1001, does include a provision that would allow somebody to walk one back after the fact, but it doesn't take away the front end that the court or the district attorney is allowed to move on behalf of another. And more importantly, though, Your Honor, I don't think we even need to get to that, because that's within what I would classify as the second component, which is—it's more like an inclusive list, whereas the beginning defines what a protection order is. The second component that begins with including, which is contrary to the definition you received moments ago, which omits a portion of what I'm about to provide, noting, including any temporary or final order issued by a civil or criminal court, whether obtained by an independent action, file pendente light, in another proceeding. That's where I think we can separate the two, because we don't have to get to a second proceeding in this case, because we have the initial proceeding before us, and those two protection orders, again, supported by criminal cause number, that really, we don't need to look to the latter component of this definition, because that is carved out for the class of cases where there is an additional proceeding that took place. We don't have those here, and so I think that should address your question, Judge Elrod. And so that certainly tends to, as I thank you, it sweeps up another component of why and how I believe the plain text really just applies to the protection order we have, because it was issued for the victim's protection, and the order itself will note the prohibited acts, and included in the Arapahoe County order a domestic violence addendum specifically that wasn't present in the Douglas County order, and that's because that order wasn't the function of a violent act, but rather the violation of the initiative. So you're not making this rule of the last antecedent argument? That would be, that's only if this court wishes to, in the alternative, if the argument that I provided is insufficient for the court. I think we can prevail in the other, in the event, mostly that directs to counsel's argument, and if you note, counsel's argument attempts to isolate the final sentence of this statute and apply it to the first sentence, and the last antecedent rule, by its very definition, will limit the reach of a particular phrase or clause to those immediately antecedent to it. So how would you say the opinion would be written if you were the master of the opinion? That's an interesting thought, Judge Alrod. But I would say that, simply stated, these orders are indeed protection orders, because they were issued by a civil or criminal court for the express protection of an individual, which is exactly what the beginning of the statute sets for. I don't think we need to go, the court needs to go further than that. Which takes me to my second point, the issue of multiplicity. In preparing for this matter, I had an 11th hour epiphany, and I feel I would be remiss without raising just a minor point to the court on the question raised by my friend of the singular intent, which weighs on the actus reus of this particular offense. And when rereading 2262A1, what really stands out is there's really two components on the front end. There is a person who travels interstate, and then with the specific intent to violate the protection order. Now, I believe, Judge Alrod, you inquired as to the transportation crossing the state lines issue, and I think if the actus reus were to stop at the interstate transportation, maybe that would be the case. But I also think if that was the actus reus, that would produce an absurd result. Because what we would have is every single time, I mean, if we were to stop the analysis there, it would allow multiple counts for people, say, every time they crossed a state line. And I don't think that's what the statute is written to contemplate. But rather, the statute places the actus reus isolating the specific intent of the individual to violate the protection order. And so what we have here is we have two protection orders issued for two different underlying state causes of action that were issued on separate dates that were both violated by the defendant. And so in as much as there's a number of tests applicable within the multiplicity angle, to look to the same evidence test which contemplates blockburger, we would look to whether there were separate facts. But I think we only get to that test if the legislative intent is silent. Well, the best indicator of the legislative intent is the text of the statute because we are free from committee reports and legislative histories and debates that don't necessarily make it to the full body of the text. And so the text does, in fact, indicate what the actus reus is. And it also notably includes six separate methods of violative conduct and also has separate penalties based on the severity of the harm at issue. And so I think that the legislative intent is quite clear that multiple prosecutions or convictions are indeed permitted. What would we need to do if we disagreed with you on that particular point of law? So if you were to disagree with that point, Judge Smith, the court's inquiry would then apply the blockburger test, which I know I grappled with initially because I know blockburger has the same elements test prior to dealing in multiplicity. And so I had to repeatedly check myself to ensure that that was, in fact, the correct test, which it is. You would then look to whether there was a requirement that the counts of conviction required proof of separate facts. And what we have here, Judge, is that we have the jury was required to find the existence of both protection orders, the one in Arapahoe County that issued on August 28th and the protection order that issued in Douglas County on September 17th. And so for those reasons, it does appear as though if the court were to get to the same evidence test, it is, in fact, satisfied because there were two different protection orders that were required. Well, aren't they in separate jurisdictions? They are indeed, Your Honor, but I don't necessarily think that shifts the calculus. And in prepping for this, I look for- Doesn't that mean you had two orders out of two different courts? That's exactly what we have, Judge. And it still does amount to the same result that separate facts were required to be found in order for the jury to convict the defendant on each of those. And this isn't, although in response to your inquiry to my friend Judge Smith about the lack of precedent, I join in my friend's conclusion. I could not find something squarely addressing the 2262 context. The closest thing I could find was in relation to the continuous course of conduct argument that's presented by my friend in her brief and in her argument today. And what I would say to that is that in the United States against Keyes, this court held that a continuous course of conduct was permitted to allow for multiple convictions under the same statute to take place. In Keyes, the defendant was charged with violating 18 U.S.C. 1591, and he had trafficked underage girls into prostitution. And in resolving that matter, this court held that it was not multiplicitous because there were separate facts required, and it was the same evidence test that this court would have to arrive upon if the conclusion is that the congressional intent was unclear. And so there's also other cases that have occurred over time, specifically within the context of the Mann Act, where an individual who brought two women over state lines was charged or was convicted twice under the same statute. And the two women is almost closely akin to the two orders in the sense that they would have to find that both women were brought over state in the same way that the jury would be required to find that they were the existence of two separate orders. And so in either avenue, whether the court agrees that the intent is clear or that the court finds or is applying the same evidence, the outcome, I don't think, changes. It's not multiplicitous in either sense. And I think the cap I would say to that is, I mean, multiplicity by its very definition is to contemplate, you know, one act giving grounds to two convictions. But we don't have that. We have two separate ones. And so, I mean, I even think by its very nature it's not multiplicitous just by that very definition in addition to all the other matters offered. I also, to circle back to some of the other questions presented, I think that the district court in making its determination as to whether the victim was in fact seeking protection, I think I would guide the court to the same analysis in that we don't need to look to, the court need not look to the sworn trial testimony, but we'll find a greater veracity with the contemporaneous statements that were elicited at the time the orders were imposed. And that was the victim admitting herself that she was in fact a victim of the defendant. Now, I do understand that there were the- Well, the jury wasn't persuaded by the testimony, and the district court wasn't persuaded by the testimony. Agreed. They were not, Your Honor. You know, so there may be – the question was could someone find something to the contrary? Is there something to support it? Yes, there's her sworn testimony to support something to the contrary. But that's not the question before us, is it? Right, it's not. And I think that's going to weigh more on one of the other arguments that wasn't addressed this morning on sufficiency. And given that my friend didn't address it, I see no reason to visit it on my own other than to say that there was, in fact, sufficient evidence. And I can stand on my brief on that issue. And as to the remaining issue of the sentencing, I would reach the same conclusion in that the court didn't err by imposing or not imposing a targeting requirement. Because as far back as 1995, this court in the United States against Burgos explicitly held that there is no targeting requirement under 3A1.1 to find a vulnerable victim. All that needs to be is that an individual, by mental or physical ailment, is particularly vulnerable. And by being pregnant with Mr. Klein's child, the victim in this case certainly was. And so unless the court has further questions, I would urge that the court affirm the district court's decision and yield back the remainder of my time. I guess we have none. Thank you. Thank you, Your Honor. All right. I'm going to give you six minutes, Ms. Bunn, because you left a minute in your original presentation. So if you need six minutes, that's fine. Thank you, ma'am. I appreciate that. I'd like to start by addressing just a bit about the multiplicity and specifically the Keyes case that counsel referenced here in front of the court. Because I don't think that Keyes is quite as on point when we are dealing with this singular course of conduct. And when you look at Keyes, it was addressing the same victim, and it was addressing the same course of conduct. But the charges that occurred in Keyes were charging different mechanisms of that occurring. It was charging by force, and it was charging as of the age. In this particular case, the government didn't charge the violations of the protective orders by committing domestic violence, and then in count two, by committing contact or communication with. What the government did in this case is they charged all of the acts in violation of one protective order. And then they charged all of those acts in violation of the second protective order. So when you look at the analysis in Keyes, it really isn't the same analysis that we have in this case by virtue of how the government decided to charge the alleged violations of the protective order in Mr. Klein's case. On another point, when we look at Blockberger, and I too went back several times to analyze that, because the other part of my practice is a military component of practice, and we do quite a bit of the Blockberger analysis there. And I agree that there are two protective orders, and so that would seem to address that there are two separate backs. However, this court has to go back and look at what was the intent of the Violence Against Women's Act. And when you look at the language that is contained in our brief, it was to close legal loopholes amongst the states so that a person could not get an order in Colorado and contact somebody in New York in order to evade prosecution and jurisdiction and enforcement. Or they couldn't be in New York and coerce or harass the person in Colorado. So that is important when you look at this analysis regarding multiplicity and regarding the motion to dismiss, because these orders were there to evince Colorado's intent to give a mechanism for this alleged victim to avoid contact and further harassment. That, even though there were two orders, it was one intent. And it is very clear that the Violence Against Women's Act was enacted to close the ability to escape that in the legal loopholes, not to enforce the intent of every single court within the state of Colorado, because that's not what we're enforcing in that situation. Moreover, I respectfully disagree with counsel that this alleged victim was seeking protection. While she may have said, I am the victim of a protective order, her actions surrounding the remainder of that, particularly in that she asked him to come pick her up and said, I don't want to be here anymore. I want to leave the state of Colorado with you, demonstrate that this is not somebody who was seeking protection from the state of Colorado. I mean, that is a troubling fact. But was there any case law that would say that the fact that she's the one who sought him out somehow militates against this? I mean, the jury could consider that, the district court could consider that. Is there any case law which says that that makes it different? No, ma'am, there is not. And I think when it gets down to it, it just comes down to your sense of, it just doesn't seem fair that someone gets orders to protect them, and they are able to come into contact, to make decisions, to do all of these things, and there is a young man on the other side of it facing 92 months in confinement for that. It's just a simple argument of, does it make sense? And that's why I do think that— Well, if Congress wanted to enhance the protection against domestic violence, I don't quite see the concern about the young man here evinced in the statute, because when this lady was picked up, A, she had called her friend in Colorado while they were on their way to Mexico, B, she had a laceration and tears streaming down her face, and C, apparently he had broken a bone in her face by attacking her. So the psychology of domestic abuse is well known, that the victim often thinks that this is something that has to be put up with, but that's not what Congress is saying, that it depends on the intent of the victim. No, ma'am, and— It's saying if the person, if the defendant travels in interstate commerce with the intent to engage in conduct, that violates a protection order. That's all it is. No, ma'am, and I realize that I'm out of time, but if I may respond— Well, go ahead. I do think that the contemplation of that is when we look at the on behalf of language. I think that although necessarily the violation of the protective order in regards to what the victim wants may not be contemplated, I do think that Congress did contemplate what this alleged victim may want by virtue of including the terminology so long as these orders were issued in response to a particular document on behalf of or by a person seeking protection. I'm just wondering how you would argue this case if the victim were a support animal or a horse. Ma'am, I can honestly say I don't think that I thought about that argument prior to coming here. Well, motion filed by or on behalf of a person seeking protection, I mean, you know, we don't normally think of their seeking protection, do we? No, ma'am, but they don't have the ability to do that. It's animal control. And this young lady did. Okay. Well, thank you, and again, thank you for very good work on behalf of your client. We appreciate it very much. Thank you, ma'am. I appreciate it. Now we have to go for the second argument, and our IT people will show up to make sure that occurs as requested.